**United States District Court**
**District of Massachusetts**

```
_____  )
                              )
LEXINGTON LUMINANCE LLC,      )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No.
                              )    12-11551-NMG
OSRAM SYLVANIA INC. and       )
LIGHTING SCIENCE GROUP        )
CORPORATION,                  )
        Defendants.           )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a consolidated action in which plaintiff alleges that defendants have infringed its patent through their sale of lighting products using light-emitting diode ("LED") technology. Pending before the Court is plaintiff's motion to dismiss defendants' counterclaims and to strike defendants' affirmative defenses based upon inequitable conduct and plaintiff's motion to amend the complaint to add a claim for willful infringement.

**I.  Background**

 **A.  Parties**

Plaintiff-counterdefendant Lexington Luminance LLC ("Luminance") is a Massachusetts corporation with its principal place of business in Lexington, Massachusetts. Plaintiff has been assigned and now owns United States Patent No. 6,936,851 ("the '851 Patent"), entitled "Semiconductor Light-Emitting

-1-

Device and Method for Manufacturing Same," issued in August, 2005. The '851 Patent was prosecuted by its inventor, Dr. Tien Yang Wang ("Dr. Wang"), who is also a Member of plaintiff.

Defendant-counterclaimant Osram Sylvania Inc. ("Osram") is a Delaware corporation with its principal place of business in Danvers, Massachusetts. Defendant-counterclaimant Lighting Science Group Corporation ("LSGC") is a Delaware corporation with its principal place of business in Satellite Beach, Florida. Both Osram and LSGC manufacture and sell lighting products, including LED light bulbs.

**B.   Procedural History**

In August, 2012 plaintiff filed separate one-count Complaints alleging that each defendant was infringing the '851 Patent through its manufacture and sale of LED light bulbs. In November, 2012 each defendant answered the allegations and asserted counterclaims against plaintiff, including that the '851 Patent is invalid on account of the patentee's inequitable conduct. More specifically, defendants allege that Dr. Wang failed to disclose to the United States Patent and Trademark Office ("the PTO") another patent that he co-authored, United States Patent No. 5,311,533 ("the '533 Patent"), entitled "Index-Guided Laser Array with Select Current Paths Defined by Migration-Enhanced Dopant Incorporation and Dopant Diffusion".

In December, 2012 plaintiff moved to dismiss and strike each

-2-

counterclaim and affirmative defense, prompting defendants to amend their answers.  Plaintiff subsequently filed the pending, second motions to dismiss and strike in January, 2013.[1]  As a consequence, the Court denied as moot plaintiffs' first motions to dismiss.

In March, 2013 the Court heard argument on the pending motions to dismiss and took the matter under advisement.  At the same conference, the Court also consolidated the cases against defendants Osram and defendant LSGC and issued a scheduling order.  Plaintiff subsequently filed the pending motion to amend the complaint in July, 2013.

## II.   **Motion to Dismiss**

Plaintiff has moved to strike each defendant's tenth affirmative defense and to dismiss each defendant's third counterclaim, both of which assert that the '851 Patent is unenforceable due to inequitable conduct.  As grounds, plaintiff argues that defendant-counterclaimants have failed to state a claim, under Fed. R. Civ. P. 12(b)(6), or to satisfy the heightened pleading standard applicable to inequitable conduct claims under Fed. R. Civ. P. 9(b).

---

[1] Both defendants are represented by the same counsel and their arguments in opposition to the motions to dismiss and strike, filed before the cases were consolidated, are substantially the same.

**A.    Standard of Review**

District courts apply the same legal standard to motions to dismiss counterclaims pursuant to Rule 12(b)(6) as they do when reviewing motions to dismiss a complaint. <u>See, e.g.</u> <u>Alongi</u> v. <u>Moores Crane Rental Corp.</u>, Civ. No. 12-10055-RWZ, 2012 WL 6589702, at *2 (D. Mass. Dec. 17, 2012).

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the claim for relief must contain "sufficient factual matter" such that it is actionable as a matter of law and "plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 667 (2009) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

**B.    Inequitable Conduct**

Inequitable conduct is an equitable defense that prevents enforcement of a patent obtained through fraud.  To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. <u>Therasense, Inc.</u> v. <u>Becton, Dickinson & Co.</u>, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  The <u>Therasense</u> Court tightened the inequitable conduct standard to ensure that the defense is

-4-

sustained only in egregious circumstances and to discourage parties from using it as a mere litigation tactic in garden-variety cases. Id. at 1288-91.  In a case involving the nondisclosure of information, the accused infringer must prove, by clear and convincing evidence, that the applicant (1) knew of the reference, (2) knew that it was material, and (3) made a deliberate decision to withhold it. Id.

Assertions of inequitable conduct must be pled with particularity under Fed. R. Civ. P. 9(b). Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009).  In order to plead inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify the specific "who, what, when, where, and how" of the material misrepresentation or omission committed before the United States Patent and Trademark Office ("the PTO"). Id. at 1328.

Moreover, although knowledge and intent may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented that information with a specific intent to deceive the PTO. Id. at 1328-29.  As a corollary, the pleadings must also permit the inference that the applicant "appreciated that [the omitted

reference] was material". <u>Delano Farms Co.</u> v. <u>California Table Grape Comm'n</u>, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (applying <u>Exergen</u>, 575 F.3d at 1318).

Information is "material" if the PTO would not have allowed a claim had it been aware of the undisclosed prior art when the claims at issue are given their broadest reasonable construction. <u>Therasense</u>, 649 F.3d at 1291-92.  Moreover, withheld information that is cumulative of what was disclosed to the PTO elsewhere in a patent application cannot be "material". <u>See</u> <u>Exergen</u>, 575 F.3d at 1330 (citing 37 C.F.R. 1.56(b)(1)).

    **C. Application**

The thrust of the inequitable conduct claim brought by the defendants is that Dr. Wang was aware of the information within the '533 Patent but did not submit the '533 Patent to the PTO when he prosecuted the '851 Patent.  Those allegations suffice to identify the "who" required under the heightened pleading standard.  Dr. Wang had knowledge of the allegedly material prior art and the opportunity to disclose that art but apparently did not do so.  The allegations with respect to the requisite materiality and intent fail to satisfy the applicable heightened pleading standard, however, because Dr. Wang could not have appreciated that the omitted information was "material."

The entirety of the purportedly "material" information omitted consists of a figure within the '533 Patent.  Defendants

argue that, if an examiner had studied Figure 6, he would have
realized that it discloses the solution to a supposedly well-
known problem in the field of LED technology described as the
"lattice-mismatch" problem.  More particularly, defendants claim
that Figure 6 of the '533 Patent anticipates or renders obvious
Claims 1 and 5 of the '851 Patent because Figure 6 depicts a
structure consisting of those claim terms, namely, a "substrate"
with a "textured district" comprising a "plurality of etched
trenches," a "sloped etching profile" and several other
characteristics.  Defendants further aver that Figure 6 closely
resembles a figure depicted in the '851 Patent (Figure 1B).

     The shortcoming of defendant's argument is that, other than
"substrate", the '533 Patent simply does not discuss any of those
anticipated or obvious claim terms, nor are those terms ever used
in the '533 Patent to describe Figure 6.  Rather, the '533 Patent
describes Figure 6 merely as a cross-section of a substrate "with
ridges after stain etching".  Put simply, defendants ascribe a
meaning to Figure 6 that the patentees themselves did not.

     Apart from the alleged facial similarity of Figure 6 in one
patent to Figure 1B in the other, defendants do not identify any
significant relationship between the '533 Patent and the '851
Patent and this Court cannot discern any other substantial
similarity.  In fact, the parties agree that the principal
dilemma that the '851 Patent purports to resolve is the so-called

"lattice-mismatch" problem that affects the manufacture of LEDs. Yet, as plaintiff notes, the '533 Patent makes no reference to that problem or anything resembling it.

In sum, defendants' inequitable conduct claim rests upon the most tenuous of grounds, namely, that, had the patent examiner considered Figure 6 of the '533 Patent, but not any of the claim terms therein, he would have determined that it anticipated or rendered obvious material terms in the '851 Patent and that Patent would not have issued.  Although it is conceivable that a figure within a patent could teach the essential elements of an invention or otherwise convey "material" information, defendants have adduced no authority supporting such a proposition.

Regardless of the soundness of that proposition in the abstract, as alleged here, defendants fail to demonstrate how the withheld information is "material" because they have not shown how a patent examiner, armed with the withheld information, would have concluded that Figure 6 anticipates or renders obvious Claims 1 and 5 of the '851 Patent. See Exergen, 575 F.3d at 1329-30 (allegations must describe how examiner "would have used [the omitted reference] in assessing patentability").  Even if defendants' averment that the Figure discloses every element of the claimed invention were not conclusory, it fails to allege how one of ordinary skill in the art could make the invention depicted within Figure 6 without undue experimentation. See In re

-8-

<u>Gleave</u>, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (stating test for anticipation).  Likewise, this Court cannot see how disclosure of Figure 6, without more, would have permitted the same person of ordinary skill to carry out the process claimed in the '851 Patent with a reasonable expectation of success. <u>See</u> <u>PharmaStem Therapeutics, Inc.</u> v. <u>ViaCell, Inc.</u>, 491 F.3d 1342, 1360 (Fed. Cir. 2007) (stating test for obviousness).

Defendants have also failed to specify sufficient factual circumstances from which the Court could plausibly infer that Dr. Wang knew the information within the '533 Patent (i.e. Figure 6) was material and deliberately withheld it.  In particular, defendants summarily claim that Figure 6 was not cumulative of cited prior art but fail to specify why or how. <u>See</u> <u>Exergen</u>, 575 F.3d at 1329-30.  Considering that defendants also claim that the lattice mismatch problem was "well-known", they must at least explain how Figure 6 conveys information that is unique and not covered by the other prior art references cited in the '851 Patent.  Without having done so, it is unreasonable for the Court to infer that Dr. Wang should have known that Figure 6 was not simply cumulative of information that he already disclosed. <u>Cf.</u> <u>Exergen</u>, 575 F.3d at 1331 (mere fact that applicant failed to disclose a prior art reference cited during a related patent application categorically failed to meet the "threshold level of

deceptive intent required to support an allegation of inequitable conduct").

Accordingly, defendants have failed to satisfy the heightened pleading standard applicable to inequitable conduct claims.  Plaintiff's motion to dismiss defendants' counterclaims and to strike their affirmative defenses asserting the same will be allowed.

### III. <u>Motion to Amend Complaint</u>

Plaintiff moves to file an amended complaint alleging that defendants, who have had notice of the '851 Patent since service of the Complaint was effected, have willfully infringed that patent by continuing to sell infringing products.

### A.   Standard of Review

Plaintiff seeks leave of the Court to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2), which states that a court "should freely give leave when justice so requires."  Even so, district courts enjoy "significant latitude in deciding whether to grant leave to amend." <u>U.S. ex rel. Gagne</u> v. <u>City of Worcester</u>, 565 F.3d 40, 48 (1st Cir. 2009).  Reasons for denying leave, <u>inter</u> <u>alia</u>, include undue delay in filing the motion, undue prejudice to the opposing party and futility of amendment. <u>Id.</u>  Amendment is futile when, if filed prior to summary judgment, the amended complaint would still fail to survive a

motion to dismiss. See Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

**B.   Willful Infringement**

To prevail on a claim of willful infringement, the patentee must prove that: (1) the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"; and (2) this objectively defined risk was either known or so obvious that the accused infringer should have known about it. K-Tec, Inc. v. Vita-Mix Corp., 696 F.3d 1364, 1378 (Fed. Cir. 2012).

**C.   Application**

Plaintiff's motion to amend will be allowed.  This Court recently examined the precise question presented here, namely, whether the amendment of a complaint to add an allegation of willful infringement is futile when that allegation is based solely upon the defendant's notice of the lawsuit and its decision to continue the allegedly infringing practice. See Englishtown, Inc. v. Rosetta Stone Inc., Civ. No. 12-10636-NMG, 2013 WL 3892829, at *2-3 (D. Mass. July 25, 2013).  Here, as in Englishtown, plaintiff does not practice the patented invention and does not compete with defendant and, therefore, requiring plaintiff to seek preliminary injunctive relief in order to state a willful infringement claim would be a frivolous exercise. See id. at 3.

Although the amended allegations are marginal, unlike inequitable conduct, claims for willful infringement are not subject to heightened pleading requirements. See PB & J Software, LLC v. Decho Corp., Civ. No. 4:12-00692-JAR, 2013 WL 530903, at *2 (E.D. Mo. Feb. 12, 2013) (noting that the majority of cases find that, like direct infringement, "the bar for pleading willful infringement is not high").  It is plausible to infer that defendants, having acquired knowledge of the '851 Patent through service of the Complaint, have continued selling infringing products with the requisite subjective and objective recklessness.  Even if such a scenario is unlikely, the proper course is to assess the reasonableness of defendants' conduct based upon a summary judgment or trial record.

### ORDER

In accordance with the foregoing,

1)    plaintiff/counter-defendant's second motion to strike the tenth affirmative defense and to dismiss the counterclaim (Docket No. 30) is **ALLOWED;** and

2)    plaintiff's motion to amend (Docket No. 47) is **ALLOWED.**

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge
Dated September 11, 2013